# WHEELING.

Jones *et ux. v.* Fox *et als.*

Submitted January 13, 1881—Decided October 14, 1882.

*(Snyder, Judge, Absent.)

1. A widow claiming to be the sole heir of her deceased husband has not a right to file a bill in chancery against parties claiming to be heirs of her husband, who are in possession of the property of her deceased husband as his heirs, and obtain from the court a decision, as to who are the true heirs of the husband, and she put into possession of her husband's land, if she establish herself to be his sole heir. In such case her remedy is in a common law court by a writ of unlawful entry or detainer or by ejectment. ( p. 376.)

2. Nor would a court of chancery have any jurisdiction in such a case, though on motion of the defendants as heirs of her husband under section 9 of chapter 110 of the Code of Virginia of 1860 dower had been assigned her in the lands of her deceased husband.   (p. 377.)

3. Nor would an allegation in the bill, that the circuit court on such motion had assigned her dower by reason of a fraudulent representation of the defendants, whereby the court was induced to assign her dower, as though the defendants in the chancery suit were heirs of the deceased husband, and she was not his sole heir. Nor would the fact, that she had, or that she had not, notice of such motion, alter the case.   (p. 380.)

4. Such assignment of dower in such case, whether with or without notice to the widow, is not an adjudication of the question, who are the heirs of the deceased ? This question in any controversy between the parties subsequently will in no manner be affected by the action or judgment of the court in such proceeding.   (p. 379.)

5. Nor would the case in any of these respects be altered, if such motion or assignment of dower was made under chapter 65 § 9 of the Code of West Virginia instead of chapter 110 § 9 of Code of Virginia of 1860.   (p. 379.)

6. The court in this case declines to consider, whether if in such a case the widow accepts the dower assigned her and surrenders the possession of her late husband's real estate, except the dower land assigned her, to such persons claiming to be heirs of her

*Cause submitted before Judge Snyder came on the bench.

husband, she is by such acts estopped from thereafter claiming,
that she is the sole heir of her husband and as such entitled to
all his real estate, or the effect on such estoppel, if it be one, of
these acts of hers being done under a misapprehension of facts
or of the law. Or whether their possession under such circum-
stances is adversary to her. These questions cannot properly
be considered in such a chancery suit, which ought to be dis-
missed, but only properly arise in the suit at common law, if
one should be instituted. (p. 381.)

7. In such a chancery suit if one of the defendants claims, that he is
the sole heir of the plaintiff's husband and in his answer asks as
affirmative relief, that he be so adjudged by the court and his
title and possession of the land quieted, the court should not
determine the question, whether he is such sole heir or grant
the relief he seeks, but should dismiss his answer, so far as it is
intended as a cross bill, a court of equity having no jurisdiction
to consider and decide the case presented by such answer. (p.
381.)

Appeal from and *supersedeas* to a decree of the circuit
court of the county of Kanawha, rendered on the 29th day of
January, 1876, in a cause in said court then pending, wherein
William Jones and wife were plaintiffs, and William Fox
and others were defendants, allowed upon the petition of said
plaintiff.

Hon. Joseph Smith, judge of the Seventh judicial circuit,
rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the
case :

William Jones and wife at April rules 1872 filed their bill
in the circuit court of Kanawha county against William Fox
jr., Margaret Fox, Bartholomew Wilkinson, Thomas Wil-
kinson and others. The plaintiffs in their bill allege, that
James Wilkinson, a naturalized citizen of Virginia, died in
the fall of 1862 seized of certain real estate in Kanawha and
Clay counties, now in West Virginia. He left surviving
him his wife, Margaret Wilkinson, who in 1864 intermar-
ried with the plaintiff, William Jones, and the following par-
ties his next of kin Margaret Fox, wife of Wm. Fox jr.,
Bartholomew Wilkinson, Thomas Wilkinson and the other
defendants named in the bill; but he left surviving him no

father, no mother, no brother, no sister, nor any descendant of either, nor any paternal children, nor any maternal kindred, who was a native or citizen of Virginia or either of the States of the United States, or either or the Territories thereof, nor of the United States, or who had before a court of record of the State of Virginia, declared on oath, that he intended to continue to reside therein, and had such declaration entered of record, being actually resident therein; all of his said next of kin being at the time of his death citizens of the United States except Wm. Fox jr. who was an alien resident of the State of Virginia. The bill therefore averred that the plaintiff Mary A. Jones his widow was and is his sole heir at law, to whom his said real estate would descend; and that it did on his death so descend and vest in her; that on her husband's death said real estate came into her possession and remained in it till 1869, when by an order of the circuit court of Kanawha made on the *ex parte* motion of Bartholomew Wilkinson, Catharine C. Wilkinson and others unknown to the plaintiffs claiming to be heirs of James Wilkinson the husband of the female plaintiff, dower was assigned her, a copy of the order confirming the report of the commissioners to assign the widow dower is filed with the bill. It was made April 9, 1869, and included *ex parte* heirs of James Wilkinson; but their names do not appear in this order. The order shows that no exceptions were made to this report.

The bill alleges, that this assignment of dower was made in mistake of the facts of the case and of the effect of the law then in force caused by the false and fraudulent devices of these parties claiming to be heirs inheriting this real estate. The bill further alleges that on April 22, 1870, certain of these parties, naming them, who claimed to be such heirs, by Wm. Fox their attorney in fact as well as said Wm. Fox in his own right entered into a written contract with J. W. M. Appleton for the sale of a part of said real estate in Kanawha county, a deed to be made as soon as a competent court ascertained, to whom this real estate, a house and lot in Charleston, descended. And under this agreement he took possession of said house and lot excepting a portion of it, which had been assigned to the female plaintiff as a part of

her dower. This agreement is filed with the bill. The balance of the said real estate, of which the husband of the female plaintiff died seized, except the part assigned to her as dower the bill alleges is in the possession of said parties, who claim to be her husband's heirs. The bill prays, that these parties claiming as such heirs and J. W. M. Appleton may be made defendants; that a decree may be entered declaring the female plaintiff to be the heir at law of her deceased husband, James Wilkinson, as to said real estate; and that this assignment of dower and contract of sale be set aside and an account of the rents and profits taken; and for general relief.

This bill was demurred to by William Fox, first because on the face of the bill the plaintiff's cause of action appears to have accrued more than five years before the institution of this suit and was therefore barred by the statute of limitations; and secondly, because there is no equity in the bill, the court having no power to declare the female plaintiff to be James Wilkinson's heir, while the lands are held adversely by others, or to set aside this contract, or to take account of the rents and profits, so long as there is such adverse holding by the defendants. On June 3, 1875, the court sustained this demurrer, but gave leave to the plaintiffs to amend their bill; and on December 3, 1875, they did amend their bill and Wm. Fox filed his answer to the bill and amended bill, and the plaintiff's replied to it generally.

The amended bill in addition to the facts stated in the original bill states that the plaintiffs did not know of any proceeding to assign to the female plaintiff dower in said lands, till the commissioners, who had been appointed by the court, came to the mansion-house of the deceased husband of the female plaintiff, in which she resided, to lay off her dower; that these parties claiming to be heirs of her husband or some of them knowingly and fraudulently instituted these proceedings and fraudulently procured some one to represent them in said court in these proceedings; that the plaintiffs are ignorant persons, who did not know that aliens could not inherit lands as heirs, nor did they know, that Wm. Fox was not a naturalized citizen; and they only learned this fact a

short time before this suit was brought. They ask the relief prayed for in the original bill.

The answer of Wm. Fox states, that this assignment of dower was made in the full knowledge and consent ot the female plaintiff, and claims, as more than five years have elapsed that it can not now be disturbed. It also alleges, that female plaintiff was and still is an alien, and that her husband, when he died, was an alien and had never been naturalized; that Wm. Fox on December 29, 1859, declared his intention or becoming a citizen before the district court of the United States for the western district of Virginia at Charleston, and was admitted as a citizen by the circuit court of Kanawha on May 20, 1875. Copies of the orders showing these facts are filed with this answer. The answer claims, that as he was a nephew of said James Wilkinson, deceased, and had declared his intention to become a citizen at the time of James Wilkinson's death, he had the capacity to inherit and did inherit his said lands. And said answer prays by way or affirmative relief, that he as the true heir of James Wilkinson and the lawful inheritor of his real estate may forever be quieted by a decree of the court in his title and possession or said real estate, and that he may have his costs. All these pleadings are sworn to.

Depositions were taken proving, that all of the defendants, who claimed to be heirs of James Wilkinson, deceased, were his next of kin, but resided always in England, where they were born, except his nephew William Fox who resided in Charleston, West Virginia; and that James Wilkinson died leaving a wife, the female plaintiff, and the facts stated in the original bill as to his relations at the time of his death.

On January 29, 1876, the court rendered its final decree on these pleadings and proofs, and decided, that "the complainants have not shown themselves entitled to the relief prayed for in the bill; and that the claims of William Fox jr. for affirmative relief in his answer has been established, and decreed, that so far as the parties to this suit are concerned, he be forever quieted in his title to and possession or all the real estate, of which James Wilkinson died seized situate in the State ot West Virginia subject always to the

dower estate assigned to the female complainant.  The court awarded no costs to either party.

To this final decree an appeal and *supersedeas* was awarded the plaintiffs.

*William A. Quarrier* for appellants:

1. A court of equity has no power to dispossess a party in possession, claiming adversely to the complainant.  Minor's Institutes, vol. 4, part 1, page 594; Code W. Va., chapter 99, sec. 2.

2. A court of equity has no power to quiet the title of a complainant not in possession as against parties holding adversely.  2 Story's Equity, section 826.

3. The judgment and order of the circuit court, assigning dower conclusively fixed the status of the complainants as tenants in dower.

4. More than five years having elapsed between the date of the order assigning dower and the institution of this suit, complainants are barred from assailing the order by the statute of limitations.

5. Complainants having taken possession of the dower as tenants in dower, they become the tenants of the next of kin of James Wilkinson, and as such tenants they cannot dispute the title of their landlords.  2 Chitty's Blackstone, (side) page 107; *Shattuck* v. *Gragg*, 23 Pickering, 88.

6. The pleadings confesses that Mary Ann was an alien at the time of descent cast and at the time of the institution of this suit.  Complainants cannot therefore claim to inherit under the laws as it was at that time.

7. For the reasons above stated the relief prayed for in the bills could not have been granted complainants, and they have no interest in the relief granted defendant Fox, upon his answer.  Whether the relief granted Fox be right or not, that part of the decree will not be reversed at the instance of parties who the records show have no interest in that part of the decree, and whose pecuniary rights are not affected thereby.  *Clark* v. *Johnston*, 15 West Va. 804.

8. At the date of the death of the intestate, the defendant Fox had taken the first oath prescribed by the act of Congress; he had thereby become an inchoate citizen, a citizen

upon probation, and had the capacity to inherit and did inherit.

9. Upon Fox's taking the final oath prescribed by the act of Congress, his citizenship related back to the date of the inception of the judicial proceedings, the taking of the first oath.

*James M. Laidley* for appellees.

GREEN, JUDGE, announced the opinion of the Court:

There are two preliminary questions involved in this record, which must be disposed of, before this Court would be justified in deciding or expressing any opinion on the main question intended to be submitted to the Court, that is, who is the heir of James Wilkinson deceased?

The first of these questions is: Have the plaintiffs made out a case, which justifies a court of equity in taking jurisdiction of it and determining their rights, as prayed for in their bill and amended bill, or should the court have dismissed the cause, so far as they sought relief, because on the facts alleged, is proven their only remedy was in a court of law? And upon the affirmative relief asked in the answer of William Fox, if the facts were proven as stated in his answer, could a court of equity grant the relief he asks, or should it leave him to seek his redress in a court of law?

If we were to exclude from our consideration the fact, that the circuit court of Kanawha had on a motion made by the defendants claiming to be the heirs of James Wilkinson assigned to the female plaintiff certain lands as her dower in the real estate of James Wilkinson, her husband, it would seem entirely clear, that she would have no case on which she could ask any relief in a court of equity. Her case would be simply, that the defendants claiming as heirs of her husband, James Wilkinson, had taken possession of certain of his real estate, when in fact she was the sole heir of her husband. If this were so, and if this were the whole of her case, her obvious remedy would be to bring against them an action of ejectment, and recover from them the land and also the rents and profits of the land in the shape of damages. This she seeks to do in this cause

by a suit in chancery; and a court of equity would be compelled to dismiss such suit for want of jurisdiction.

But in this case there is this additional fact, that the defendants or some of them as heirs of James Wilkinson in 1869 moved the circuit court of Kanawha to appoint commissioners to lay off to the female plaintiff her dower in the lands of her husband, and the court did so. Dower was accordingly laid off to her by these commissioners, and their report thereof was confirmed and the female plaintiff took possession of the dower, so assigned to her, and held it for more than five years, while these defendants as heirs took possession of the residue of James Wilkinson real estate and have ever since held it claiming title to it as such heirs. This assignment of dower the female plaintiff asks to have set aside, as procured by fraudulent devices and by a misrepresentation of facts to the court, it having been mislead to regard these defendants as heirs of James Wilkinson when in fact the female plaintiff was his sole heir; and she being ignorant of the law and facts took possession of the lands, which the court was thus fraudulently induced to assign to her, and they took possession of the balance of the real estate. And she therefore asks the court to set aside this assignment of dower, and order the defendants to restore to her the residue of the real estate in their possession and pay to her the rents and profits thereof, which they had received.

Do these additional facts, if all proven, confer any jurisdiction on a court of equity to grant her this or any other relief? They certainly do not, unless they obstruct her in bringing an action of ejectment against them. If we leave out for the present the fact, that she accepted the dower, which had been there assigned, it is, it seems to me, clear, that all these other facts throw no sort of obstruction in her way in instituting this action of ejectment against them. It is claimed, that the judgment of the circuit court in appointing commissioners to lay off her dower upon the motion of the defendants as heirs at law of James Wilkinson, is a perfect estoppel to prevent her claiming for herself in an action of ejectment these lands as the sole heir of James Wilkinson, as the proceedings to lay off her dower was a judgment of the circuit court, that the defendants were heirs of James

Wilkinson; and this fact must be regarded as conclusively established in these proceedings. In other words, it is *res adjudicata*; and these proceedings must be set aside before she could successfully bring such action of ejectment.

This would be true, if these proceedings, if not set aside, do conclusively establish, that the defendants are heirs at law of James Wilkinson. But do they have that effect? We have none of these proceedings in this record except the order of the circuit court made on April 9, 1869; stated to have been made in "*Ex parte Heirs of James Wilkinson* on motion to assign dower to Mary Ann Jones, widow and relict of James Wilkinson, in the real estate, of which said James died seized." This order confirms a report of certain commissioners, who had been heretofore appointed to make an assignment of the widow's dower in these lands of James Wilkinson, deceased, lying in Clay and Kanawha counties, West Virginia. It does not appear, when these commissioners were appointed; but it is fair to presume in the absence of all evidence or assertion even to the contrary, that they were appointed prior to the first day of April, 1869, as this was only nine days prior to the entry of this final order. The motion therefore to appoint these commissioners was made under the Code of Virginia of 1860 ch. 110, § 9; for this law remained in force till April 1, 1869. The language of this section is:

"Dower may be assigned as at common law; or upon the motion of the heirs or devisees or any of them the court may appoint commissioners by whom the dower may be assigned and their assignment when confirmed by the court shall have the same effect as if made by the heir at common law. But nothing herein contained shall be construed to take away or affect the jurisdiction which courts of chancery now exercise over the subject of dower."

The very words of this statute seems to me to show clearly, that the proceedings here authorized for the assignment of dower are merely *ex parte* proceedings and that it is herein clearly provided that no action of the court had in such *ex parte* proceedings should be regarded as conclusively adjudging anything in a manner binding on the widow; and that it certainly would not preclude her from

denying, that those, who made the motion, were heirs of her husband. It would certainly be strange, if she was precluded by proceedings, of which she may have had no notice, and which it is expressly said shall have no other effect, than if dower had been assigned by the heir to her at common law. The mere fact, that she was notified, when the law did not require any notice to be given to her, would certainly not in any manner render these proceedings any more binding on her, than they would be if strictly *ex parte.* In this case I presume they were without any notice to her. She says so expressly in her amended bill; and this is confirmed by the only order in these proceedings, which is produced, and which shows on its face, that it was an *ex parte* proceeding.

The appellees' counsel insists, "that in these proceedings it must be presumed, that notice was given her, as there is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been regularly done, till the contrary appears. See *Voorhees* v. *Bank of U. S.,* 10 Pet. 449; *Harvey* v. *Tyler,* 2 Wall. 328; *Newman* v. *Mollohan,* 10 W. Va. 488." But I would draw from these decisions and principles as laid down exactly the opposite conclusion as to the facts. For as the law did not require notice of this motion to be given, the presumption in the absence of proof must be, that no such notice was given to the widow. But I do not regard it as important, whether she in fact had notice or not; for, as I have said, the proceedings would not from the very words of the law conclusively adjudge anything. This law was changed April 1, 1869. See Code of W. Va. ch. 65 § 9 p. 444. It seems to me obvious, that if the proceedings had been under the Code of West Virginia, they would from the wording of the law, as it now is, be in no respect more conclusive than the like proceedings under the Code of 1860. As to the effect of these proceedings the wording of the law in the Code of West Virginia is the same as in the Code of Virginia of 1860 above quoted. The proceedings upon the record in this assignment of dower in no way impeded the female plaintiff from bringing her action of ejectment against these defendants, who were in the possession of her husband's lands as his heirs, if,

as she claims, she was the sole heir of her husband capable of inheriting his lands. For these proceedings could have no effect in such action of ejectment in establishing the fact, that the defendants were heirs of James Wilkinson deceased. This fact was not adjudicated in these proceedings to assign dower; and by the words of the statute, under which these proceedings were had, they were to be as little effectual, as if they had not been had in court, and the dower had been assigned her in pais.

It is argued, that the principle, that a tenant cannot dispute his landlord's title, would include the widow, unless this assignment was first set aside. This principle is not universal but is subject to exceptions. (*Alderson* v. *Miller*, 15 Gratt. 279); but though we regard the widow, the female plaintiff in the case, as the immediate tenant of the heirs, who assigned to her dower through the action of the court, this would not make the principle, which we have referred to applicable to the lands held by these heirs, which the female plaintiff seeks to recover; for she is certainly not a tenant of these lands but if of any, only of those, which she holds as dower land, not of those, which she claims to own as *fee simple* owner as heir of her husband and held by the defendants under the claim, that they are the true heirs of her husband.

It may be suggested, that the charge, that the defendants had fraudulently procured this assignment of dower to be made to the female plaintiff, justified her in bringing this suit to set it aside, so as to prevent it effectually from impeding her in her action of ejectment for their lands. But there was no sort of necessity to set aside their proceedings for such purpose or indeed for any purpose; for we have shown that these *ex parte* proceedings could in no manner prejudice the rights of the female plaintiff or impede her in her action of ejectment. The same may be said of her prayer to set aside the agreement by the heirs to convey this land to Appleton. This agreement would in no manner prejudice the female plaintiff, and therefore it was immaterial to her, whether it was set aside or not. We have said that the female plaintiff could not be prejudiced by the proceedings in the circuit court in assigning her dower or by any orders

made in the *ex parte* proceedings.   She stands in exactly the same situation as if these persons claiming to be heirs had without applying to the court assigned her dower, and she had thereafter permitted them to occupy the residue of the land not assigned to her as dower.

It is not for us in this case to say, whether her so acting would estop her from thereafter claiming the land as her husband's sole heir or prejudice her right to recover the land in an action of ejectment, and, if it did, whether such prejudice or estoppel could not be avoided by proving, that she acted under a mistake of facts, or was imposed upon and did not understand her rights, or whether their possession under such circumstances would be regarded as adversary to her. These are properly questions belonging to the action of ejectment should one be brought by the plaintiffs against defendants; and though it has been discussed at the bar, we express no opinion in reference thereto; and for like reasons we express no opinion on the question discussed at the bar as to whether the female plaintiff or Wm. Fox is the sole heir of James Wilkinson, or whether the possession of the defendants, as shown in this cause, has been or is adverse to the female plaintiff.

For the reason, which we have stated, the decree of the circuit court of Kanawha made on January 29, 1876, must be reversed, set aside and annulled, and the appellants must recover of the appellee Wm. Fox jr., their costs in this Court expended; and this Court proceeding to render such decree as the court below should have rendered doth dismiss the amended bill of the plaintiffs but without prejudice to any action of ejectment or other suit against the defendants or any of them, which they may be advised to bring; and the Court doth further refuse to grant to the defendant William Fox the affirmative relief prayed for in his answer and doth dismiss the same, so far as it is intended to operate as a cross bill, but without prejudice to him in any suit, which he may bring against the plaintiffs or which may be brought against him by the plaintiffs or either of them; and it is further ordered, that the plaintiffs do pay to the defendants their costs expended in the circuit court of Kanawha.

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREE REVERSED.